Nicole Freeling

8631 Sierra Ridge Dr. Apt. F

Indianapolis, IN 46239

317-500-8757

Plaintiff in Pro Se

FILED

MAR 21 2023

U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

NICOLE FREELING,

               Plaintiff,

vs.

INDIANA DEPARTMENT OF TRANSPORTION, JOHN LEMING, in his individual and official capacity AND CRYSTAL M. WEAVER, in her individual and official capacity

               Defendant.

Case No.: 1:23-cv-00278-TWP-MJD

**SECOND AMENDED COMPLAINT FOR VIOLATIONS OF:**

(1) **42 U.S.C SECTION 1983**
(2) **14th AMENDMENT THE EQUAL PROTECTION CLAUSE AND DUE PROCESS OF LAW**

## NATURE OF THE CLAIMS

1.    This is a civil rights action under 42 U.S.C. § 1983 and the Fourteenth

Compliant and Jury demand

Amendments to the United States Constitution, brought to remedy a violation of the Plaintiff NICOLE FREELING Constitution and Private rights by unequal treatment and depriving Plaintiff of life, liberty, or property without due process of laws.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. §§ 1331 and 1343 as this case involves questions of federal law.

3.   Venue is proper in, and Defendants are subject to the personal jurisdiction of, this Court because Defendant maintain facilities and business operations in the district, and all or most of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391.

## PARTIES

4.   Plaintiff Nicole Freeling is an African American Woman, a resident of Indianapolis, Indiana, and a citizen of the US. Plaintiff has been licensed as real estate broker since 2014. Plaintiff is a WOSB certified with the State of Indiana.

5.   Upon information and belief, Defendants INDIANA DEPARTMENT OF TRANSPORTION also known as INDOT is a government agency located in the Indianapolis Indiana. INDOT is likewise responsible for implementation and application of the policy for INDOT Real Estate Division.

6.   Defendant JOHN LEMING, in his individual and official capacity as

Compliant and Jury demand

INDOT Consultant Prequalification Research Analyst. Defendant is responsible for the prequalification application process and enforcing of policy for INDOT Real Estate Division.

7.    Defendant CRYSTAL M. WEAVER, in her individual and official capacity as INDOT Prequalification Engineer and manager over Defendant John Leming. Defendant Crystal Weaver is responsible for the prequalification application process and enforcing of policy for INDOT Real Estate Division.

## **FACTUAL ALLEGATIONS**
### **(Before requested FOIA Records)**

8.    Plaintiff contacted the Indiana Department of Transportation in September 2021 after learning about becoming a Consultants with their Real Estate Division.

9.    In September 2021 Plaintiff was directed to John Leming for the prequalification process. At this time Plaintiff had the initial phone and email conversations with Defendant about her real estate experience and background. John Leming informed Plaintiff that she would have to pass the INDOT real estate exam before becoming prequalified and directed Plaintiff to Todd Clift whose title was Support, Property Management, Relocation & LPA. (See Exhibit 1)

10.    October 21st, 2021, Plaintiff had a conversation with Todd Clift about her real estate experience in the private sector. This is when Plaintiff

learned about Relocation. Todd Clift connected Plaintiff to Keshia Lewis who administers the Relocation and Julie Foreman who administers the Buyer exam. Plaintiff decides to go for Relocation. Plaintiff receives email of all necessary materials that was required to help study and pass the exam also a real estate manual different from the Defendants 12.8 Manual. (See Exhibit 2)

11.     March 10th, 2022, Plaintiff had the first exam and failed. Keshia Lewis explained the test is designed for consultants to fail on first try because of the training sessions that take place right after to give Consultants hands on training.

12.     April 21st, 2022, Plaintiff had taken the exam for the second time and failed. Shortly after this exam Plaintiff had another 3–4-hour training session with Ms. Keisha Lewis.

13.     June 16th, 2022, Plaintiff's third time taking the Relocation exam. This time the Plaintiff passed the exam. Plaintiff has gained knowledge of the Uniform Act and 49 CFR, PART  24. Plaintiff was informed by Keisha Lewis that she would send over the confirmation letter to the Plaintiff, and she would also notify the prequalification department that Plaintiff passed the exam. Keshia Lewis also instructed Plaintiff to reach back out to the prequalification department to complete the application process. (See Exhibit 3)

14.     Toward the end of June 2022, Plaintiff made phone call to John Leming in prequalification's. At this Plaintiff informed the Defendant

that she had passed the Relocation exam. Plaintiff never told defendant she passed both Relocation and Buyer exam only the Relocation.

15.   On the same call with Defendant John Leming, Plaintiff ask for help completing the application process. Plaintiff asked Defendant how to operate the ITAP portal system correctly. Defendant was not helpful when replying on how to navigate putting information into application's system.

16.   Approximately the first week of July 2022, Plaintiff made another phone call to the Defendant John Leming. Plaintiff asked Defendant if her application was done correctly. Defendant says, "he's working on eighteen other applications before he can get to Plaintiffs', and it will be about another three weeks".

17.   June 25th, 2022, Plaintiff reached out to the Defendant John Leming to check the progress of the application. This time John Leming informed Plaintiff that she needs to update her insurance policy. On this day the Defendant never mentioned anything else concerning the application.

18.   On August 2nd, 2022, Plaintiff sent over insurance policy to John Leming through email and he did not respond to Plaintiffs' email. That morning Plaintiff received a LinkedIn notification that her profile had been viewed by Defendant John Leming.

19.   On August 3rd around 9:42 AM. Plaintiff sent another email to Defendant John Leming asking if he'd received the insurance certificate

Compliant and Jury demand

sent the day before, Defendant never replied to that email. However around 9:55AM Plaintiff did receive an email from Defendant John Leming stating that her application has been denied because Plaintiff did not list any projects in the 12.8 of the manual which he states is a requirement for the Relocation work type.

20.     Plaintiff made phone call to Defendant John Leming around 10:12 AM to gain clarity on why her application was denied and where in the Manual is this listed? On this call Defendant told Plaintiff she was denied because "explaining complex highway right away and constructions plans is necessary." He stated this is the way they've always done it going strictly by their manual, and these are the procedures they have always followed therefore Plaintiff does not meet the requirement in the 12.8 Manual. Plaintiff has reason to believe that defendant falsified this information because other Relocation Consultants are not responsible for explaining complex highway right away and constructions plans.  The current Relocation agents did not require that knowledge to obtain approval for prequalification. During the call Defendant stresses that Plaintiff does meet the appropriate experience for the 12.8 work type. However, Plaintiff has similar real estate background as other relocations agents who are White that the Defendants qualified. (See exhibit 4 thumb-drive)

21.     Plaintiff has reasons to believe Defendants has qualified White Relocation Consultants that has similar qualifications and background of private sector real-estate/small business and not working for a "large firm". White Relocation Consultants were not profiled in this strict

manner and held to these 12.8 Manual requirements that Defendants held Plaintiff to require.

22.    Defendant John Leming told Plaintiff to get a hold of the "girl" who helped with the test. Defendant was referring to Kiesha Lewis the Relocation supervisor an African American. I contacted Ms. Keisha Lewis and explained to her my application was denied. After she spoke to Defendant Leming, she advised me after she had spoken to John Lemeing all I needed to add were projects that I have completed in the private sector. Plaintiff updated the application by adding projects from her experience in her real estate career.

23.    On August 5th, 2022, Plaintiff received email from Defendant John Leming telling her "I have expedited your application and after discussing with Keisha Lewis and Crystal Weaver it was agreed that you do not possess the requisite experience for approval 12.8-Relocation. Therefore, your application has been denied." Plaintiffs in shocked because she had done what both John Leming and Keisha Lewis referred her to do by updating the application and adding three projects that she previously worked in the real estate industry.

24.    Same day August the 5th around 8:54 AM Plaintiff called Defendant John Leming on the phone and asked the Defendant why she is being denied for the second time. Again, the Defendant iterates that Plaintiff does not meet the requirements for the Relocation work type. Defendant states he did not make this decision on his own, but he included the decision was decided also by his boss Crystal Weaver and Keisha Lewis.

25.  During the phone call Defendant John Leming told Plaintiff "that in the Relocation work she would be in situations applying CFR 49 PART 24 by working on a roadway project where Plaintiff would have to read blueprints". This is contradicting to what the Plaintiff was trained on and what she studied for the exam. Defendant told Plaintiff that she would not have any support from INDOT. Defendant states that he has denied "individuals" like the Plaintiff in the past. Defendant becomes combative toward Plaintiff during this call. Plaintiff asked several times has everyone else met all those requirements to get approved in Relocation that the Defendants are adamant the Plaintiff must possess. Defendant says "Yes, out of my 15 years of working prequalification's everyone he has approved has met all those requirements". (See exhibit 5 thumb-drive)

26.  Same morning of August 5th, 2022, Plaintiff reaches out by phone to Defendant Crystal Weaver the boss of Defendant John Leming. Defendant Crystal Weaver told Plaintiff that she was denied because of "lack of experience as far as federal code of regulation". Defendant said, "they take a look at everybody experience and make sure everyone has a certain amount of experience before they can be qualified". Crystal Weaver was very clear they are following the "Manual" for the approvals. Plaintiff asked the Defendant the same question she asked Defendant John Leming, if other agents met all those requirements by previously working on highway projects, working with firms, and reading blueprints to get approved in Relocation, which is what both Defendants are adamant the Plaintiff must possess. Defendant Crystal Weaver also answered Yes. She states they try to maintain consistency in meeting those requirements. (See exhibit 6 thumb-drive)

Compliant and Jury demand

27.    August 9th, 2022, Plaintiff contacted via phone Keisha Lewis. Plaintiff was told by Ms. Lewis that they went over her head with the decision. She informed Plaintiff that they want her to have more hands-on experience and she would like to connect Plaintiff to current Relocation Consultants. Keisha speaks about a company that is a small ma and pop company not a "big firm", working for themselves, and Plaintiff would be able to get a "parcel" hand on experience. The small company is Boomerang Ventures, LLC and is owned by a Caucasian couple Ande and Joe Gromosky. During this call Keisha Lewis disclosed that all Relocation Consultants are White, she says there is no diversity. (See thumb-drive 6a)

28.    September 14, 2022, Plaintiff met with one of INDOT'S Relocation Consultants Ande Gromosky for lunch. Ande tells Plaintiff that she and her husband got into this position because she was a realtor prior, and Todd Clift informed them about the opportunity in INDOT'S Relocation. Coming into this position they did not have any INDOT Right Away experience and they had learned by asking other agents questions. She also told Plaintiff that it doesn't make sense that Defendants did not qualify her after passing the exam and the only way to get the "experience" would be if INDOT provided the work of a "parcel". She made it clear that they are not reading road maps nor blueprints. She shows Plaintiff how they looked for comparable properties on the MLS and how to get the reports to Keshia Lewis. Most of the basics Ande covered in the scope of Relocation work is exactly what the Plaintiff is experience in as a real estate broker and, also what Plaintiff learned from the exams and training with Keisha Lewis. Ande

says "it's hard for them to help train their competition referring to the Plaintiff".

29.     Plaintiff reached out to another Relocations Consultants with INDOT and had a phone call with Michael Kuehl who has been with INDOT for many years. Michael also made it clear that Plaintiff is "competition", and it would be strange to train her.  Michael said the Relocation division is a very "niche". Michael stated that he is frustrated with INDOT for not prequalifying me after passing the exam which he states, "it's not an easy test to pass". Michael also says he's a little surprised that Plaintiff passed the test, and they are not approving prequalification. (See exhibit 7 thumb-drive)

## **FACTUAL ALLEGATIONS**
### **(After requested FOIA Records)**

30.     January 3rd, 2023, Plaintiff Nicole Freeling, made a public record pursuant to IC § 5-14-3 Indiana Code to the Indiana Department of Transportation. On February 20th, 2023, some of those records were released. Plaintiff requested all emails from Keisha Lewis, Defendants John Leming and Crystal Weaver discussing Plaintiff or Plaintiff's business. Plaintiff also requested records of all approved and denied prequalification applications from 2019-2022. (See exhibit 8)

31.     According to emails release from FIOA request. Defendant John Leming begin profiling Plaintiff Nicole Freeling months before the denial of the application. This started immediately after Plaintiff Nicole

Compliant and Jury demand

made the phone call to the Defendant in late June to inform him about passing the Relocation exam and to get his assistance on how to complete the application.

32.   June 28th, 2022, Defendant John Leming sent an email to Todd Clift in the Real estate division. In the email Defendant has made a false statement about the Plaintiff. Defendant said Plaintiff told him that she passed both Relocation and Buyer exam. Plaintiff never said she passed both exams only told Mr. Leming that she passed the Relocation and told him that Keisha Lewis would send over the information needed from their department.

33.   According to the emails from the FIOA request on June 28th, 2022, Keisha Lewis responds to the emails that the Defendant is sending out with misleading information about what exam the Plaintiff had passed. In one of the emails Keisha Lewis is confirming that Plaintiff has passed the Relocation exam and she was going to get the Plaintiff added to their list so that Plaintiff could get prequalified.

34.   On June 29th, 2022, Defendant John Leming has emailed Keisha Lewis and continued to defame the Plaintiff's abilities and work ethics by using words such as "sketchy" to describe the Plaintiff's experience. Defendant continues to fabricate stating that the Plaintiff told him that she has "some INDOT" experience when Plaintiff never told John Leming nor any other INDOT employees that she has any experience with INDOT. Plaintiff was always upfront about the work she's done in real estate field.

35.   From the same email on this day of June 29th, 2022, the Defendant has now caused others such as Todd Clift to question the ability of the Plaintiff to perform as a relocation agent.

36.   The Defendant John Leming also raised his concerns that the Plaintiff passed the exam after the 3rd try. Defendant has never questioned the White relocation agents that has taken the exam 2-3 times before passing. Because in the email from June 29th Ms. Keisha Lewis explains to him that 95% of the Consultants have taken the exam 2-3 times. On this same email Keisha Lewis extensively explains to the Defendant the extensive training and knowledge the Plaintiff has gained with understanding the requirements, policies, and procedures of the Uniform Act CFR Part 24. She also makes it very clear to the Defendant that she would be there to assist her in the future just like she does with all the other Consultants that need assistance to perform their assignments. (See exhibits 9-9e)

37.   Defendant John Leming received an email from Keisha Lewis on August 3rd, 2022, at 11:39 AM (when the Plaintiff first application was denied) from this email Keisha Lewis is asking and raising her concerns about the Plaintiff denial. Keshia Lewis once again is explaining to the Defendant that the Plaintiff does possess skills to perform Relocation. She also states in her 8 years of working in Relocation she has seen serval agents who has taken the exam who did not have Relocation experience other than working in the Real Estate Industry private sector just like the Plaintiff. These other agents became pre-qualified without merit, she went as far as telling the Defendant she can provide him with their names if he needs them. (See exhibit 10)

38.    August 4th, 2022, Defendant was forwarded an email that the Plaintiff sent to Keisha Lewis to confirm her real estate broker license number. Because the Defendant had made a statement to Keisha Lewis that the Plaintiff's license number on the application was an "invalid" license number, and he was not able to confirm it. This is another false statement the Defendant John Leming has made concerning the Plaintiff. Plaintiff sent screenshot to Keisha Lewis of Plaintiff's Nicole Freeling real estate license showing correct and active status with the State of Indiana. (See exhibits 11& 11a)

39.    On August 9th 2022 emails between Keisha Lewis and Defendant John Leming. Keisha Lewis is trying to gain understanding from the Defendant on how long the Plaintiff Nicole Freeling needs this "hands on experience". Defendants replies that his concerns are the Plaintiff "limited experience" he is criticizing the Plaintiff abilities once again with comments about the Plaintiff making statements saying, "hold her hand", "consistently reviewing or redoing her work". He goes on to state another main concern of his is that the Plaintiff's ability to read and interpret, explain complex highway and construction plans, or that she posses a thorough knowledge of 49 CFR, Part 24.

40.    On the same email Keisha Lewis responds letting the Defendant know again that all Relocation agents, despite their knowledge of 49 CFR, part 24, all their paperwork must come to her desk for review. She goes on explaining to the Defendant John Leming how she answers their questions daily. She says they all have issues with their parcels or questions regards to handling their job. She goes even farther in this

email highlighting what the Defendant is stating "his main concern to read, interpret, explain complex highway right of way and construction plans" DOES NOT APPLY TOWARDS RELOCATION. Keisha Lewis tells the defendant that if this is his reasons for denying the Plaintiff Nicole Freeling application, then his concerns are invalid and does apply to Relocation.

41.   The Defendant responded to Keisha Lewis email stating "Ok, well look, I can go with whatever you decide". He goes on stating more of his concerns, the work type requirements in the Manual and if this not a requirement it needs to be address in the next revision. Defendants never communicated this to the Plaintiff or informed the Plaintiff this is not a requirement for relocation after receiving this information. Defendants should have known this defect in their policy because he is the one who qualifies all other Relocation agents. Keisha Lewis tells Defendant that if that requirement is in the Manual, then it needs to be address. She asks him to send it to her so they can remove it from the Manual. After Keisha Lewis see's the Manuel 12.8 she tells the Defendant that "this most definitely needs to update to reflect that those reading /interpretation/ understanding is not required for Relocation. While this information is discovered no one from the Indiana Department of Transportation informed Plaintiff Nicole Freeling of these mistakes in their Manual which is their reason for the Plaintiff's denial.

42.   August 10th, 2022, Defendant John Leming is responding to Keshia Lewis about the Manual telling her that "they never make minor adjustments to the Manual he tells her how he has been in this position for 14 years and only seen 1 major revision which happened in 2018.

Keisha responds stating it's interesting what you said about the manual because for the last 2 years we have been able to make changes to the manual".

43. August 29th, 2022, 12:06 PM Defendant John Leming received email from Keisha Lewis telling Defendant "I spoke with Tom, and we need some clarification in regards to what year this Real Estate Manual was printed for this particular 12.8 Relocation" Defendant replies the only changes he was aware of was 12.4. Which is Apprising not Relocation. (Plaintiff received remaining email responses pertaining to this email. Plaintiff is still waiting on requested FOIA- missing emails from INDOT'S records department.) (See exhibits 12-12f) (See exhibits 13-13e)

44. Plaintiff has reason to believe that there is a disparity among African Americans getting selected and prequalified for the Real Estate Division opportunities with Indiana Department of Transportation. Plaintiff requested FOIA records from their department to show what applicants were approved for these opportunities and what applicants are getting denied from 2019-2022. The information the Plaintiff received was not what she requested; however, they sent over a small list of Disadvantage Business Enterprise (DBE) approval list with 17 companies a mixture of real estate niches. Out of the 17 the Plaintiff researched only 1out of the 17 on that list may have been African American owned the rest were all White or other ethnicities owned businesses. INDOT'S real estate division has a disparate impact on African Americans. (See Exhibit)

(Plaintiff is still waiting on this requested missing application data from INDOT'S records department.) (See exhibit 14)

## (INDOT'S REAL ESTATE MANUAL POLICY)
## (FACTUAL ALLIGATIONS)

45.   Defendants used their Manual to deprive Plaintiff of her civil rights by using part of the manual to disqualify Plaintiff for requirements that were not required by White Relocation Agents.

46.   Defendants used the Manual to give false statements to the Plaintiff by telling her "Everyone else in Relocation has met all those requirements before getting approved."

47.   Plaintiff was held at higher standard using the Manual 12.8. The standards that Plaintiff was held to was not a requirement for Relocation.

48.   Defendants used the Manual for pretext and knew or should have known the real requirements for Relocation.

49.   The Defendants belittled and undervalued the Plaintiff by telling her what she did not know regardless of the Plaintiff's past training and passing Relocation exam.

50.   Defendants never converse with the Real Estate department to ask what is required for all Relocation agents to make sure Plaintiff was

getting treated with a fair reason. Defendants used the Manual to force their customs to single out the Plaintiff for denial.

51.   Defendants never acted in good faith to contact the Plaintiff and explain the mistakes and misleading information that is in the 12.8 Manual that they used to cause the denial of her application.

52.   Defendants intentionally concealed this material fact about the Manual's wrong qualifications listed for 12.8 Relocation after the Plaintiff's denial. In spite of having the correct information about the real Relocation qualifications Defendants still knowingly disregards the Plaintiffs rights and safety to know the truth.

53.   Defendants knew or should have known about the different Manuals stating different requirements with different qualifications for Relocation. (See exhibit 15 & 16)

## FIRST CAUSES OF ACTION
### Violation of Civil Rights Under the Fourteenth Amendment
### Equal Protection based on Race Discrimination
### (42 U.S.C. § 1983)

54.   Plaintiff here by repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

55.   The Equal Protection Clause of the Fourteenth Amendment requires that the government treat similarly situated persons alike.

56.   At all times complained herein the Defendants were acting under the color of law, pursuant to their authority as prequalification decision makers, and were acting in the course of their employment with the Indiana Department of Transportation.

57.   The Defendants violated the Plaintiff's right of equal protection, subjecting Plaintiff to discrimination by denial of the application for Relocation Consultant after Plaintiff was deemed qualified through passing the exam and trained by the Relocation Supervisor Keisha Lewis. Similarly situated Relocation agents who are White were able to be approved after passing the exam. Some of these similarly situated agents were not expected to have nor meet the high bar standard that was used to deprive the Plaintiff from equal protection. Defendants went as far to devalue her name and her ability to perform the work.

58.   The reasons for Plaintiff's denial stated by the Defendants were "Plaintiff does not meet all the Manual requirements particularly in reading, interpret, explaining highway right of way and construction plans". Defendants has not held these "required standards" for White Relocation similarly situated agents with same qualifications as the Plaintiff. Therefore, the Plaintiff has not been equally protected.

59.   Defendants acting under the color of law concealed material facts and made false statements to deprive Plaintiff's Civil Rights by providing misleading information to the Plaintiff such as all the previous Relocation agents possess all the Manual's 12.8 CFR Part 24 qualifications requirements.

60.     Pursuant to its 12.8 Relocation Manual policy and practices, what the Defendants is using to intentionally discriminate against the Plaintiff. Defendants are treating Plaintiff differently than other similarly situated Relocation agents on the basis of Plaintiffs race, a protected classification.

61.     Defendant's knowledge of 12.8 Relocation policy should have been known what and what is not required for this work type. Defendants never acted in good faith to correct any misleading information relayed to the Plaintiff about the requirements they told her she "must have" and later this was revealed these are not requirements needed for Relocation and never has been. They never contacted or informed Plaintiff about any deficiencies in their Relocation policy weeks after the denial by the Defendants.

62.     When government regulations, like the Indiana Department of Transportation policy and practices challenged herein, infringe on such fundamental rights, discriminatory intent presumed.

63.     Defendant's 12.8 Relocation Manual policy and practice have also been applied to intentionally discriminate against the Plaintiff's rights of equal protection under the laws.

64.     Defendants lack a rational or compelling state interest for such disparate treatment of Nicole the Plaintiff. But for the Plaintiff race (African American) the application would have not been denied because

White similarly situated agents' applications were approved with similar experience and credentials as the Plaintiff.

65. Defendant's discrimination against Nicole the Plaintiff is not narrowly tailored to serve a compelling state interest.

66. Accordingly, Defendant's 12.8 Relocation Manual Policy and practice of prohibiting Nicole the Plaintiff from working as a Relocation Consultant with INDOT, she was treated unfairly in the application process requiring to possess more requirements and experience that similarly situated agents did not need to possess. This violates Nicole the Plaintiff's' right to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

67. As a direct result of the intentionally discrimination preformed by the Defendants, Plaintiff has suffered with economic and emotional injuries. Plaintiff is entitled to all legal and equitable remedies available under §1983.

## SECOND CAUSES OF ACTION
**Violation of Civil Rights Under the Fourteenth Amendment**
**The Due Process Clause**
**(42 U.S.C. § 1983)**

68. Plaintiff here by repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

69.     The Due Process of the Fourteenth Amendment prohibits the government from depriving any person of life, liberty, or property without due process of law".

70.     Plaintiff rights has been deprived when Defendants impleaded 12.8 Relocation policy requirements that were not legitimate requirements for the Relocations agents.

71.     Defendants acting under the color of law concealed material facts about the Manual used to deny Plaintiff application and, made false statements to deprive Plaintiff's Civil Rights by providing misleading information.

72.     Plaintiff did not get the same privileges as other similarly situated agents because they were approved without having those same heighten requirements and did not go through strict profiling or evaluation like the Plaintiff.

73.     Before the deprivation of life, liberty or property of Nicole Freeling the Plaintiff, Defendants did not give a proper notice and opportunity for the Plaintiff to be heard through the Due Process of Law.

74.     Plaintiff had a legitimate claim to become a Relocation agent because Plaintiff was trained and successfully passed the Relocation exam and posses a Real Estate Broker license which are the only requirements for other agents.

Compliant and Jury demand

75.     Defendants lack a rational or compelling state interest for such disparate treatment of Nicole the Plaintiff and the reason being was false and misleading. But for the Plaintiff race (African American) the application would have not been denied because White similarly situated agent's applications were approved with similar experience and credentials as the Plaintiff.

76.     Defendants did not sufficient justification for infringing Plaintiffs rights by invoking all the requirements of the 12.8 Manual Policy that led to the denial of Plaintiff's application for Relocation. Instead, the Defendants chose to discriminate and provide falsified information to deny the Plaintiff.

77.     The Defendants actions was not fair or reasonable toward the Plaintiff who is African- American. Data shows a disparate impact in INDOT'S Real estate division among African Americans.

78.     Accordingly, Defendant's 12.8 Relocation Manual Policy and practice of prohibiting Nicole the Plaintiff from working as a Relocation Consultant with INDOT, she was deprived of liberty and property to have the same enjoyment of life through opportunities and contracts as similarly situated agents. This violates Nicole the Plaintiff's' right to due process of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

79.     As a direct result of the intentionally discrimination performed by the Defendants, Plaintiff has suffered with economic and emotional injuries.

Plaintiff is entitled to all legal and equitable remedies available under §1983.

## JURY DEMAND

80.   Plaintiffs request a trial by jury to the extent allowed by law.

## PRAYER FOR RELEF

WHEREFORE, Plaintiff respectfully prays for relief as follows:

A. For a declaration that Defendants' actions, and practice as alleged herein are unlawful and in violation of Section 1983, Fourteenth Amendment the Equal Protection Clause, and the Due Process Clause;

B. A permanent injunction against the Defendants from engaging in any further unlawful practices of discrimination by providing equal opportunities for African Americans;

C. An award of compensatory, nominal and punitive damages to the Plaintiff;

D.  An award of litigation cost and expenses;

E.  Pre-and post-judgement interest;

F.  Such other and further relief as the Court may deem just and proper;

Compliant and Jury demand

Respectfully submitted,

NICOLE FREELING

Dated: March 21, 2023

By:

Compliant and Jury demand